FOX HORAN & CAMERINI LLP
Kathleen M. Kundar (*pro hac vice* application forthcoming)
825 Third Avenue, 12th Floor
New York, New York 10022-9515
(212) 480-4800

GREENBERG DAUBER EPSTEIN & TUCKER
A Professional Corporation
Sheryl L. Reba
One Gateway Center - Suite 600
Newark, New Jersey 07102-5311
(973) 643-3700

*Attorneys for Plaintiff Michael Silverstein*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| MICHAEL SILVERSTEIN, | |
| Plaintiff, | 17 Civ. _____ |
| - against - | |
| | **COMPLAINT** |
| | **and JURY DEMAND** |
| ACCURATE BOX COMPANY, INC., MARK SCHLOSSMAN and JOHN DENNEHY | |
| Defendants. | |

---X

Plaintiff Michael Silverstein ("Plaintiff"), for his Complaint against the Defendant Accurate Box Company, Inc. ("Defendant"), Defendant Mark Schlossman ("Schlossman"), and Defendant John Dennehy ("Dennehy") (collectively the "Defendants"), by and through his attorneys, Fox Horan & Camerini LLP and Greenberg, Dauber, Epstein & Tucker, a Professional Corporation, states as follows:

1

## STATEMENT OF THE CASE

1. This is an action for violation of the Age Discrimination in Employment Act, 29 U.S.C. 621, et seq. ("ADEA"), and for violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. ("LAD").

2. When Plaintiff was 66 years old and employed as a highly qualified and the most successful commission sales representative for Defendant, he was discharged from his employment by Defendant and his supervisors, Schlossman, Defendant's Executive Vice President, and Dennehy, the Defendant's Chief Operating Officer.

3. The discharge was because of his age and in retaliation for having complained about age discrimination against him by the Defendants.

4. At the time of his discharge, Plaintiff's commissions were $350,000 per year.

5. Before the accumulation of interest, cost and fees, including but not limited to attorneys' fees, Defendants are liable to Plaintiff for damages in the amount of at least $2,000,000.

## PARTIES

6. Plaintiff is an individual, who is a citizen of the State of New Jersey, and resides at 8 Vanderbilt Court, Old Bridge, New Jersey 08857. He was employed by Defendant at its Paterson, New Jersey office.

7. Defendant is a corporation formed under the laws of the State of New Jersey. At all times pertinent hereto, the Defendant had it principal offices at 86 Fifth Avenue, Paterson, New Jersey 07524, County of Passaic. In 2016, Defendant had approximately 150 employees.

8. Defendant Schlossman is the Executive Vice President of Defendant Accurate Box Company, Inc. He is a citizen of New Jersey residing at 20 Deer Trail, Caldwell, New Jersey 07006.

9. Defendant Dennehy is the Chief Operating Officer of Defendant Accurate Box Company, Inc. He is a citizen of New Jersey residing at 19 Fulton Rd., Somerset, New Jersey 08873.

## JURISDICTION AND VENUE

10. The court has subject matter jurisdiction under 29 U.S.C. § 626(c) (ADEA) and 28 U.S.C. §1331 (federal question); and this Court may exercise supplemental jurisdiction over Plaintiff's claim brought under the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1 et seq. (LAD) and 28 U.S.C. §1367(a) (supplemental jurisdiction).

11. Venue is proper in the District of New Jersey under 28 U.S.C. §1391(b), in that the three Defendants reside in the State of New Jersey in this district and the events or omissions giving rise to Plaintiff's claims occurred in this district.

12. On July 1, 2016, Plaintiff timely filed his charge alleging age discrimination and retaliation by Defendants with the Equal Employment Opportunity Commission. The charge was filed within 180 days of the discriminatory employment practices described in the charge he filed.

13. On or about January 13, 2017, the Plaintiff received his Notice of Right to Sue from the Equal Employment Opportunity Commission dated January 11, 2017.

## BACKGROUND FACTS APPLICABLE TO ALL COUNTS

14. Plaintiff's date of birth is January 9, 1950.

15. Plaintiff was employed by Defendant continuously from January 4, 1984 until his discharge by Defendants on April 14, 2016. During these 32 years, Plaintiff worked as a commissioned sales representative.

16. At the time of his discharge, Plaintiff was 66 years old.

17. Defendant manufactures high graphic corrugated boxes and mailers.

3

18. Schlossman and Dennehy were the supervisors of Plaintiff and were substantially younger than him. Schlossman was in his 50's and Dennehy was in his 40's. They joined in the decision to terminate Plaintiff's employment and otherwise discriminate and retaliate against Plaintiff because of his age. They were actively and directly involved in the discriminatory conduct.

19. As of the date of Plaintiff's discharge, all of the other sales representatives employed by Defendant were younger than Plaintiff.

20. Plaintiff was a highly qualified and successful sales representative who was an important part of Defendant's growth as a company.

21. As of the beginning of 2016, Plaintiff, through his efforts, was the salesman who had the largest book of business and earned the most commissions. His annual commission earnings were about $350,000, and based on the contracts on his, he stood to earn about $350,000 per year through 2018.

22. During his employment as a commissioned sales representative, Plaintiff regularly brought to the Defendant opportunities for profitable contracts with customers and ideas for new business.

23. Throughout Plaintiff's tenure, his wages were based solely on commissions with an agreed upon commission rate. However, in certain instances, in order to secure the business for the Defendant, Plaintiff would offer, or agree, to take a decreased commission rate to lower the costs, provide the customer a lower price and thus win the business for the Defendant.

24. Plaintiff did exactly that for a major contract that he obtained from a very large customer ("K") —Plaintiff sacrificed his own compensation by agreeing to reduce his commission rate by two-thirds on most products, so that the contract price would be attractive enough to the customer to enter into the contract with Defendant.

4

25.     The Defendant was awarded the business and a contract was signed by K for a three year period from July 1, 2014 until June 30, 2017 (the "K-Contract").

26.     Plaintiff had targeted K as a customer and worked for months to get the K-Contract. The Defendant would not have had the K- Contract without Plaintiff's efforts. The K-account was the largest non-house account ever brought in to the Defendant's business by a sales representative.

27.     Had Plaintiff not been terminated, from the date of his discharge until the end of the K-Contract, the volume of business under the K-Contract would have resulted in commission compensation to Plaintiff on that Contract alone in the amount of approximately $200,000.

28.     From at least late December 2015 until Plaintiff was discharged in April 2016, the members of the executive team of the Defendant as well as the sales representatives all were younger than Plaintiff.

29.     On January 11, 2016, (two days after Plaintiff's 66th birthday) Schlossman, and Dennehy met with Plaintiff, and Schlossman told Plaintiff that he ought to speak to his wife about retiring.

30.     At this meeting, Schlossman told Plaintiff that Plaintiff should have traveled more often to the customer who signed the K-Contract as well as to other customers to spend more face time with them. No mention whatsoever had been made by the Defendant to Plaintiff regarding lack of travel prior to this date.

31.     Without any discussion on how Plaintiff could improve or change things going forward, Schlossman informed Plaintiff that he would be taking the K-account away from Plaintiff. He did not say when the K-account would be taken away but told Plaintiff that Plaintiff would no longer receive commission compensation for the K-Contract when this was implemented.

32. On January 12, 2016, Plaintiff told Schlossman that he had no intention of retiring and that he wanted to keep the K-account and that he would do whatever Defendant believed he should do as to customer K.

33. On January 29, 2016, . Schlossman and Dennehy again met with Plaintiff. Schlossman said that he was taking the K-account away from Plaintiff and that he wanted Plaintiff to tell the customer that he was retiring because Plaintiff was "age 66 going on 67."

34. Plaintiff answered that he needed to talk to some people. Dennehy then responded, among other things, that if Plaintiff "wanted to keep [his] other accounts, [he] should be careful what [he] does with an attorney." Schlossman was present. Without accounts, Plaintiff would lose all his compensation.

35. On February 3, 2016, Plaintiff met again with Schlossman and Dennehy. Plaintiff told them that he was not retiring and that even if they were taking the K- account away from him, he wanted to keep his other accounts and continue working. They replied that the K-account was separate from the other accounts and that Plaintiff could continue with his other accounts.

36. Plaintiff then told Schlossman and Dennehy that he believed that the Defendant's taking away of the K-account was based on age discrimination, and Plaintiff cited the facts that Defendants were pushing him to retire and instructing him to tell K that he was retiring because he was "age 66 going on 67." Schlossman and Dennehy then told Plaintiff that he would be off the K-account in two or three months.

37. On March 31, 2016, Schlossman and Dennehy issued a memo stating that Plaintiff would no longer be responsible for the K- account as of the end of April and that Plaintiff's commissions on the K-contract would cease on April 30, 2016. A copy of the memo (with customer's identity redacted) is attached hereto as Exhibit A.

6

38. The memo declared that Plaintiff had "retracted" his stated plan to retire at the end of 2016. That declaration was false. Plaintiff had never said that he planned to retire at the end of 2016.

39. Upon information and belief, the Defendants have told customers that Plaintiff retired, thereby damaging Plaintiff's prospects for future employment and business opportunities.

40. The memo delivered on March 31, 2016, unlike anything that ever occurred as to Plaintiff's handling of accounts over 32 years, stated eight actions for Plaintiff to undertake as to his customer accounts, and Defendant further stated, "Going forward, we will be periodically evaluating whether this level of support is being met and changes will be made if necessary."

41. The memo mostly reiterated the regular practices of Plaintiff for years. To the extent more contact with customers was being required by Defendant, Plaintiff agreed to do so.

42. On April 14, 2016, only two weeks after Plaintiff was given the memo, he was called into a meeting with Schlossman, Dennehy and Human Resources head Olga Izquierdo. They told him that he was being terminated that day.

43. Schlossman stated that the reason for Plaintiff's termination was the Defendant's dissatisfaction with an e-mail sent to customer W.

44. Customer W had been brought in by Plaintiff twelve years earlier. During the twelve years, Plaintiff obtained four consecutive three-year contracts for Defendant from W.

45. Sometime during the week beginning April 4, 2016, Plaintiff had been invited by W to submit a bid before W issued its formal RFQ (request for proposal). This effectively meant that W was so satisfied with contracts that Plaintiff had handled historically that, if the price and financial concession offered were acceptable, W likely would not issue an RFP and Defendant would get the contract.

7

46. Plaintiff reported W's invitation to Schlossman.

47. On Friday, April 9, 2016, Schlossman telephoned W and told W's representative the Defendant's price offer and financial concessions. He said that Plaintiff would send the offer to W in an e-mail. Plaintiff was sitting across from Schlossman during the call.

48. The following Monday morning, April 11, 2016, Plaintiff gave a draft of the email to W to Dennehy because Schlossman was away. Dennehy said he would discuss it with Schlossman. Later that day, Dennehy told Plaintiff that Schlossman wanted the email to have more pizzazz. Plaintiff edited the email and then gave it to Dennehy who then approved it for sending.

49. Upon information and belief, a new contract with W was obtained by the Defendant after the email was sent.

50. Plaintiff was fired on April 14, 2016, merely ten weeks after he complained about age discrimination.

51. Upon information and belief, the W account, as well as, other accounts on which Plaintiff had been earning commissions are now being handled by one or more younger sales representative including Joshua Grochala who was being recruited back in January and whose hiring was delayed until after Plaintiff was discharged. Joshua Grochala is about 20 years younger than Plaintiff.

52. Defendant retaliated against Plaintiff for stating in February that he was being discriminated against because of his age. Until age discrimination was asserted by Plaintiff as to his removal from the K account, the Defendant had affirmed that Plaintiff could continue with other accounts. Then, within several weeks, Plaintiff was discharged.

53. The Defendant took those weeks to "paper" the file on trumped up performance issues.

54. From the time of Plaintiff's discharge until the end of 2018, when Plaintiff had planned to retire, Plaintiff would have earned commissions in the amount of $987,000, on contracts he had brought in.

## FIRST CAUSE OF ACTION
### (Age Discrimination and Retaliation In Violation of the ADEA)

55. Plaintiff repeats and realleges the foregoing allegations as if fully set forth at length herein.

56. By its conduct alleged herein, Defendant discriminated against Plaintiff because of age in violation of the ADEA.

57. The Plaintiff was, at all pertinent times alleged herein, 66 years of age and thus within the protected age category under the ADEA.

58. At all times relevant to the claims herein, the Defendant was a private employer of twenty or more persons and is an employer within the meaning of the ADEA.

59. Plaintiff was employed by Defendant.

60. Plaintiff was terminated from his employment because of his age and in retaliation for his complaining to Defendant about age discrimination, all in violation of the ADEA.

61. Plaintiff was well-qualified for his sales representative position with Defendant, and he had been satisfactorily performing his job. Any claim by Defendant about Plaintiff's performance is mere pretext for unlawful age discrimination.

62. Plaintiff was replaced by a much younger individual.

63. Defendant willfully violated the ADEA either by knowing that its conduct was prohibited by law or by showing reckless disregard for whether it was prohibited.

64. The unlawful and willful actions of the Defendant in terminating Plaintiff based on age and in retaliation for Plaintiff's complaining about age are the proximate cause of the damages sustained by Plaintiff herein.

65. As a result of the unlawful age discrimination of the Defendant, Plaintiff has suffered and will continue to suffer loss of commission compensation.

66. Additionally, Plaintiff has lost the value of his employee benefits.

67. Plaintiff has diligently tried to locate substantially equivalent employment but has not located any such employment.

68. Defendant is liable to Plaintiff for lost commissions and commissions Plaintiff will not receive through the end of 2018, plus interest thereon, the value of lost benefits and liquidated damages, plus attorneys' fees and expenses, and costs of suit.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant Accurate Box Inc. for back pay and front pay, the value of lost benefits, interest, liquidated damages, attorneys' fees and expenses, costs of suit, and for such other relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
### (Age Discrimination and Retaliation in Violation of the LAD)

69. Plaintiff repeats and realleges the foregoing allegations as if fully set forth at length herein.

70. Plaintiff's age made a difference in the treatment he was accorded by Defendants in a significant way.

71. Defendants' acts and omissions as set forth hereinabove, including Defendants' termination of the employment of Plaintiff and retaliation against him for complaining about age discrimination constitute discrimination in violation of the LAD.

10

72. Defendant was aided and abetted in its unlawful age discrimination by Schlossman and Dennehy.

73. Plaintiff's losses are the result of Defendants' acts or omissions.

74. Defendants' conduct was malicious and Defendants acted in a wanton and willful disregard of Plaintiff.

75. As a result of Defendants' acts and omissions, Plaintiff was subjected to humiliation and emotional distress.

76. Defendants are liable to Plaintiff for lost commissions Plaintiff will not receive through the end of 2018 and lost employee benefits, interest thereon, emotional distress damages, and punitive damages, plus attorneys' fees and expenses.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendants Accurate Box Inc., Mark Schlossman and John Dennehy for back pay and front pay, interest, and emotional distress damages, punitive damages, attorneys' fees and expenses, costs of suit, and for such other relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff herein demands a trial by jury as to all issues.

## RESERVATION OF RIGHTS

Plaintiff reserves its rights to amend this pleading pursuant to *Fed. R. Civ. P. 15(a)* to assert any additional cause of action against Defendants based on continuing investigation and receipt of discovery from Defendants.

Dated: March 15, 2017

GREENBERG DAUBER EPSTEIN & TUCKER
A Professional Corporation

By: _____
Sheryl L. Reba

Attorneys for Plaintiff Michael Silverstein

## CERTIFICATION PURSUANT TO L.CIV.R. 11.2

I certify that the matter in controversy is not the subject of any other civil action pending in any Court and is likewise not the subject of any pending arbitration proceeding. I further certify that no other civil action or arbitration proceeding regarding the subject matter of this action is contemplated and I am not aware of any parties who should be joined in this action at this juncture.

Dated: March 15, 2017

GREENBERG DAUBER EPSTEIN & TUCKER
A Professional Corporation

By: _____
Sheryl L. Reba

Attorneys for Plaintiff Michael Silverstein

# EXHIBIT A

3/31/16

Michael,

The purpose of this document is to ensure we have understanding regarding your evolving role.

- After the end of April, you will no longer be responsible for calling on K
- Your compensation for calling on K will also end as of April 30, 2016.
- You have retracted your stated plan to retire at the end of 2016.
- We expect that you will continue to call on the rest of your customers.
- This includes:
    - Coordinating all initiatives between all of Accurate's departments and the customer.
    - Meeting regularly, at least quarterly, with all key members of your customer's organizations to ensure they view us in positive terms and that there are no communication gaps.
    - Being in constant contact with your customers regarding their releases and deliveries.
    - Keeping on top of changes in the customer's demand
    - Being on top of any quality issues.
    - Responding to any request for information
    - Keeping track of their inventory and communicating with the customer about excess and obsolete items.
    - Keeping on top of the status of our contract with your customers and the bidding process in such a way as to maximize the chance we retain the customer. In addition to completing and updating any information for necessary bidding process or required of the customer.

- Going forward, we will be periodically evaluating whether this level of support is being met and changes will be made if necessary.

Thanks
-Mark and John

**EXHIBIT A**